general be unsecured. As the court explained in *In re Formed Tubes, Inc.:*

> If the creditor obtains a security interest to secure payment of the new value or is paid for the new value by the debtor, there is in effect no return of the preference and the section 547(c)4 defense is not available to the creditor.

46 B.R. at 647; *see also In re American International Airways, Inc.,* 56 B.R. 551, 554 (Bankr. E.D.Pa.1986). Here, while Gateway was generally an unsecured creditor, it retained a purchase money security interest in the $96,500 worth of inventory advanced after March 17. The new inventory was therefore secured. On the liquidation of Prescott's estate, Gateway presumably would retake possession of that inventory and nothing would be left for distribution to the general creditors. Therefore, the requirements of section 547(c)(4) have not been fulfilled, and the district court's finding of new value must be reversed.

VI. Valuation of Gateway's Security

 Gateway held a junior interest in the collateral of the East Washington store in which Marine held a senior interest. As the debt secured by Marine's interest was reduced, therefore, Gateway enjoyed a corresponding increase in the value of its security interest. The bankruptcy court found that during the preference period Gateway's security interest increased in value from $0 to $59,643.71. In order to arrive at this figure, the bankruptcy court first had to assess the value of Marine's collateral on March 16. Gateway, like Marine, contends that no evidence was introduced to establish this value. As we have already determined that the bankruptcy court's assessment of the value of Marine's collateral on March 16 was not clearly erroneous, we affirm the court's findings as to the size of Gateway's preference.

For the foregoing reasons the judgment of the district court is AFFIRMED in part and REVERSED in part.

ED MINIAT, INC., South Chicago Packing Company, Ronald M. Miniat and Edmund M. Miniat, Jr., Plaintiffs-Appellants,

v.

GLOBE LIFE INSURANCE GROUP, INC. and Combined International Corporation, Defendants-Appellees.

No. 85–2846.

United States Court of Appeals, Seventh Circuit.

Argued May 15, 1986.

Decided Nov. 5, 1986.

Rehearing Denied Jan. 16, 1987.

Alexander D. Kerr, Jr., Keck, Mahin & Cate, Oak Brook, Ill., for plaintiffs-appellants.

Gary L. Starkman, Arvey, Hodes, Costello & Burman, Chicago, Ill., for defendants-appellees.

1. *See infra* note 12.

Before BAUER, Chief Judge, CUDAHY and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

The plaintiffs were participating employers in a Retirement Life Reserve ("RLR") insurance policy issued by the defendants. The plaintiffs allege that the defendants violated their fiduciary duties under ERISA and also make various state claims. The district court dismissed the complaint on the grounds that the plan was not established and maintained by an employer or an employee organization and thus was not an employee welfare benefit plan covered by ERISA. We reverse.

## I.

The well-pleaded facts in the complaint, which must be accepted as true when considering a motion to dismiss, *see LaSalle National Bank v. County of DuPage*, 777 F.2d 377 (7th Cir.1985), are as follows. The plaintiffs are Ed Miniat, Inc., an Illinois corporation ("Miniat"); South Chicago Packing Company, the successor in interest to Miniat; and Ronald and Edmund Miniat, Jr., officers and shareholders of Miniat and South Chicago Packing Company (collectively the "Miniats"). Defendants are Globe Life Insurance Company ("Globe"), which issued the RLR policy to Miniat; Ryan Insurance Group, which owns Globe's stock; and Combined International Corporation, which in turn owns Ryan's stock.

In late 1980 Miniat adopted an employee benefit plan consisting of group life insurance (the "Miniat Plan" or the "Plan").[1] The Miniat Plan provided for the acquisition of life insurance for eligible employees that would provide a fully paid policy upon the employees' retirement. The funding provision of the plan provided:

The benefits provided under the Plan are to be funded in their entirety by insurance underwritten by The Globe Life Insurance Company, Executive Life Insurance Company, Guardian Life Insurance Company and Provident Life Insurance

Company or any other carrier the Plan Administrator deems acceptable. All of the provisions contained in the policies representing any insurance companies [sic] liabilities are considered part of this Plan. Benefits not payable under such policies shall not otherwise be payable under this Plan.

Plaintiffs' Appendix (hereafter "App.") at 47.

The Miniat Plan was actually funded through Miniat's participation, effective October 1, 1980, in a RLR trust (established to hold premiums) sponsored by Globe.[2] Amended Complaint ¶ 18. Miniat paid premiums which were accumulated in the RLR trust and which were later to be used to purchase the life insurance coverage provided for in the Miniat Plan.

The amended complaint alleges that the RLR policy included clauses that gave Globe the "apparent unilateral right to reduce the rate of return that Globe was to pay on account to Miniat to a scheduled minimum (4% per annum) and to increase significantly the annual premium rates to a scheduled maximum." Amended Complaint ¶ 21. Plaintiffs allege that about July 1983 Globe "unilaterally and without justification announced a withdrawal from the RLR insurance business and an abandonment of existing policy holders, by reducing the rate of return paid on account from 10% to 7% to 4% per annum by November 1, 1983 and increasing premium rates to the maximum allowed by the policy." Amended Complaint ¶ 24. Miniat then terminated its participation in the RLR Trust. Globe allegedly deducted "front end load" charges when returning the company's accumulated contributions, thus retaining as "overhead more than half of the premiums paid by plaintiffs to fund the plan without having ever issued any insurance under the plan."[3] Amended Complaint ¶ 35. Plaintiffs allege that Globe's actions were without economic justification and breached Globe's fiduciary duties and obligations under ERISA. Amended Complaint ¶¶ 34, 36, 37, 49, 50. The complaint also contains state law claims respecting unlawful discrimination in violation of the Illinois Insurance Code, promissory estoppel, breach of contract and unjust enrichment.

The district court granted defendants' motion to dismiss. It found "no evidence

---

**2.** Miniat executed an Adoption Agreement for the Globe Life Reserve Trust, which provided:

I. PLAN ESTABLISHMENT OR AGREEMENT. The undersigned (the "Participating Employer"), in order to establish or amend its plan of group-term life insurance adopts and agrees to be bound by the provisions of the trust agreement, dated September 1, 1978, between Globe Life Insurance Company as Settlor and Rhode Island Hospital Trust National Bank, as trustee (herein called "Trustee"). The trust thereby established is herein sometimes called "Globe Life Reserve Trust." The Globe Life Reserve Trust, this Adoption Agreement, and any schedules or agreements incorporated in either of them, including the "Selection Schedule" attached hereto and made a part hereof, are designed to constitute a plan of group-term life insurance as defined in Section 79 of the Internal Revenue Code and relevant regulations.

. . . .

V. NAMED FIDUCIARY. The named fiduciary under the plan is the Participating Employer. The Insurer shall have the authority and responsibility for (i) processing and paying the claims for benefits in accordance with the terms and conditions of the insurance contracts under which such benefits are provided, and (ii) providing written notice of any claim that has been denied and for affording a full and fair review of such claims pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") Section 503 and the regulations promulgated thereunder. The Participating Employer shall be the plan administrator and shall have the authority and responsibility for all other matters relating to the control and management of the plan.

. . . .

VII. TAX CONSEQUENCES. It is intended that this plan does qualify as a plan of group term life insurance which will satisfy the requirements of Section 79 of the Internal Revenue Code and the regulations thereunder. However, the undersigned Employer acknowledges that in establishing this plan and purchasing policies hereunder it is relying solely upon the tax advice of its own legal counsel and that neither Globe Life Insurance Company nor any of its representatives or agents are responsible for the tax consequences of this plan.

App. at 40.

**3.** Globe retained $106,018.60 of Miniat's premium payments. Amended Complaint ¶ 35.

of the existence of a plan separate and apart from the RLR trust," District Court Memorandum at 9, and that the RLR trust did not fall within ERISA because the Plan was not established and maintained by an employer or an employee organization. District Court Memorandum at 10. The court thus dismissed the allegedly federal claims for lack of subject matter jurisdiction under ERISA and dismissed the state claims for lack of pendent jurisdiction.

On appeal plaintiffs contend that the pleadings adequately allege that the Miniat Plan was separate from the RLR trust and was established by an employer. Defendants argue that the district court's analysis and disposition were correct and further argue that the plaintiffs lack standing and that Globe was not a fiduciary under ERISA.

### II.

The defendants argue that the plaintiffs lack standing to bring this claim. ERISA provides that an action may be brought by a "participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a). Further, ERISA provides that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(e)(1). Defendants argue that the corporate plaintiffs, who clearly are not participants or beneficiaries, are not fiduciaries and therefore lack standing.

ERISA provides that:

a person [4] is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any

moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) [5] of this title.

29 U.S.C. § 1002(21)(A) (footnotes added).

Plaintiffs contend that Miniat had discretionary authority over the income or assets of the Miniat Plan by virtue of its ability under Article XIV of the Plan to amend any provision of the Plan. Article XIV provides:

The Employer may amend or terminate this Plan at any time and will furnish any required notification of amendment or termination to the appropriate regulatory authorities and to Plan participants or beneficiaries.

App. at 53. Presumably the provisions subject to amendment include the funding provisions of Article V, in which the insurers providing benefits under the Plan are named, as well as Article I, which designates the administrator and named fiduciary under the Plan.

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). We think that the allegations in plaintiffs' complaint, considered in connection with the Miniat Plan, show that plaintiffs may well be able to prove that the corporate plaintiffs were fiduciaries and thus had standing to bring this action. Hence the claims of the corporate plaintiffs should not have been dismissed at this stage for lack of standing.

In *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir.1984), we held that an individual and a

---

**4.** A "person" is defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association or employee organization." 29 U.S.C. § 1002(9).

**5.** Section 1105(c)(1)(B) refers to persons other than named fiduciaries designated by named fiduciaries "to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan." 29 U.S.C. § 1105(c)(1)(B).

736

corporation who had the power to appoint and remove the trust administrators were fiduciaries for that purpose. *See* ERISA Interpretative Bulletin 75–8, 29 C.F.R. § 2509.75–8, D–4 (1985).[6] In the case before us it appears that the corporate plaintiffs, by virtue of their power to amend the plan, had the power to select a new insurance company and a new administrator to administer the Plan. Thus, at least for some purposes, they may be fiduciaries and hence have standing to bring this suit.[7] *See Great Lakes Steel v. Deggendorf,* 716 F.2d 1101 (6th Cir.1983) (complaint under ERISA should not be dismissed for lack of standing because employer adequately alleged its status as fiduciary); *United States Steel Corp. v. Commonwealth of Pennsylvania Human Relations Commission,* 669 F.2d 124, 126 (3d Cir.1982) (employer may be fiduciary when it has authority to alter terms of plan and authority to administer plan). Further, in *Leigh* we held that fiduciaries responsible for selecting and retaining their close business associates as plan administrators had a duty to monitor appropriately the administrators' action. *Leigh,* 727 F.2d at 135. Similarly, the corporate plaintiffs here may well have some duty to monitor the actions of the plan administrator and the insurance company administering the Plan.

▮ Defendants also argue that the individual plaintiffs are not properly before the court and therefore *their* standing as beneficiaries (which is undisputed) cannot operate to resolve the standing issue. Plaintiffs filed an amended complaint, without leave of court, adding Ronald and Edmund Miniat, as beneficiaries, to the complaint as additional plaintiffs. Although Federal Rule of Civil Procedure 15(a) permits a party to freely amend its complaint in a timely fashion,[8] Federal Rule 21 requires a court order to add or drop parties.[9] Thus, in order to add Ronald and Edmund Miniat as plaintiffs, the plaintiffs should have sought an order of the district court. *See La Batt v. Twomey,* 513 F.2d 641, 651 n. 9 (7th Cir.1975) ("amended complaint could not, as a matter of course, add new parties"); Annot., 31 A.L.R.Fed. 752, 754–55 (1977). However, if a plaintiff files an amended complaint adding additional parties without first obtaining leave of the court, the defect may be corrected and does not, in itself, justify dismissal of the action. *See Northeast Women's Center v. McMonagle,* No. 85–4845 (E.D.Penn. Jan. 23,

6. Section 2509.75–8, D–4, states:

 Q: In the case of a plan established and maintained by an employer, are members of the board of directors of the employer fiduciaries with respect to the plan?

 A: Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries only to the extent that they have responsibility for the functions described in section 3(21)(A) of the Act. For example, the board of directors may be responsible for the selection and retention of plan fiduciaries. In such a case, members of the board of directors exercise "discretionary authority or discretionary control respecting management of such plan" and are, therefore, fiduciaries with respect to the plan....

7. *District 65, UAW v. Harper & Row, Publishers,* 576 F.Supp. 1468, 1477–78 (S.D.N.Y.1983) does not hold, as defendants assert in their brief (at 27), that an employer cannot be a fiduciary by virtue of its power to amend. *District 65* holds that a decision to terminate a pension plan is not subject to ERISA's fiduciary standards. 576 F.Supp. at 1477. That case, however, also considered whether an employer's amendment of a

plan breached ERISA's fiduciary standards, thus apparently assuming that an employer may be a fiduciary based on its power to amend a plan. 576 F.Supp. at 1480–81. Further, although a decision to terminate may not be subject to ERISA's fiduciary standards, the manner in which a plan is terminated may be subject to these standards. 576 F.Supp. at 1479–80.

8. Rule 15 provides:

 A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served.... Fed.R.Civ.P. 15(a).

9. Rule 21 provides:

 Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.... Fed.R.Civ.P. 21.

1986) [Available on WESTLAW, DCTU database]; *United States v. Schine*, 125 F.Supp. 738, 20 Fed.R.Serv. 336, 337 (W.D. N.Y.1954); *Orloff v. Hayes*, 7 F.R.D. 75, 76 (S.D.N.Y.1946); 7 C. Wright & A. Miller & M. Kane, *Federal Practice & Procedure* § 1688 at 344 (1972). We see no reason that this error cannot be corrected on remand. Apparently, the defendants have not been prejudiced by the plaintiffs' failure to follow proper procedures. *See La Batt*, 513 F.2d at 651 n. 9; *United States v. Sinclair*, 347 F.Supp. 1129, 1136 (D.Del. 1972), *appeal dismissed sub nom. United States v. Estate of Pearce*, 498 F.2d 847 (3d Cir.1974), *vacated in part, McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir.1977).

## III.

Defendants also argue that we should affirm the district court's dismissal of the complaint because Globe was not a fiduciary and liability under all of the ERISA counts is premised on Globe's fiduciary status. Because plaintiffs do not argue that they may bring a claim under ERISA even if Globe is not a fiduciary, we shall assume that dismissal is required if Globe is not a fiduciary. Both parties seem to agree that the question whether Globe is a fiduciary is controlled by this court's decisions in *Chicago Board Options Exchange v. Connecticut General Life Insurance Co.*, 713 F.2d 254 (7th Cir.1983) and *Schulist v. Blue Cross*, 717 F.2d 1127 (7th Cir.1983).

■ Defendants rely on *Schulist* to argue that Globe is not a fiduciary because it is without authority to change the rate of return and the premium rate. In *Schulist* the plaintiffs had argued that Blue Cross had breached its fiduciary obligation by retaining a premium surplus. The contracts between the parties did not establish that the premium surplus was to be refunded. We held that Blue Cross was not a fiduciary for purposes of the case because it did not exercise discretionary authority with respect to the setting of rates. Blue Cross had entered into an "arm's length bargain presumably governed by competi-

tion in the marketplace" that specified the premium rate. *Schulist*, 717 F.2d at 1132. The defendants therefore argue that under *Schulist* Globe is not a fiduciary because it entered into an arm's length bargain governed by competition in the marketplace that permitted Globe to change the rate of return and the premium rate. The defendants in effect argue that no action by an insurer can subject it to fiduciary liability so long as discretion to take the action was granted to it by contract and the contract was entered into at arm's length. This reading of *Schulist* is incorrect. Rather, *Schulist* stands for the proposition that if a specific term (not a grant of power to change terms) is bargained for at arm's length, adherence to that term is not a breach of fiduciary duty. No discretion is exercised when an insurer merely adheres to a specific contract term. When a contract, however, grants an insurer discretionary authority, even though the contract itself is the product of an arm's length bargain, the insurer may be a fiduciary.

■ The case before us is more analogous to *Chicago Board*. In *Chicago Board* the insurer amended the contract so that contributions to guaranteed accounts could not be withdrawn for ten years. The insurer arguably had the right under the contract to effect this type of amendment unilaterally. We held that the insurer was a fiduciary because the policy itself was a plan asset and the ability to amend it, and thereby affect its value, established control over that asset in the insurer. We stated in *Chicago Board* that the insurer's control was not qualitatively different from the ability to select investments.

It is clear that Congress intended the definition of fiduciary under ERISA to be broad.... Had CBOE simply given Plan assets to Connecticut General and said, "Invest this as you see fit and we will use the proceeds to pay retirement benefits," Connecticut General would clearly have sufficient control over the disposition of Plan assets and be a fiduciary under ERISA. *Peoria Union Stock*

738

*Yards Co. v. Penn Mutual Life Insurance Co.*, 698 F.2d 320 (7th Cir.1983).[10] Because Connecticut General guaranteed the rate of return in advance for the Guaranteed Accounts, that is not the case here. *Nevertheless, the policy itself is a Plan asset, and Connecticut General's ability to amend it, and thereby alter its value, is not qualitatively different from the ability to choose investments. By locking CBOE into the Guaranteed Accounts for the next 10 years Connecticut General has effectively determined what type of investment the Plan must make.* In exercising this control over an asset of the Plan, Connecticut General must act in accordance with its fiduciary obligations. 713 F.2d at 260 (emphasis supplied) (footnote added). Similarly, in the case before us, Globe has the power to amend the contract and thereby alter its value. The power exercised by Globe does not appear to be qualitatively different from the ability to choose investments. Therefore we believe that plaintiffs may be able to prove that Globe is a fiduciary.

IV.

The most significant issue here is whether there is an employee benefit plan that would be subject to ERISA. ERISA, of course, generally applies only to employee benefit plans. 29 U.S.C. § 1003(a). The district court held that the RLR trust was not an employee benefit plan and that there was no evidence of the existence of a plan separate and apart from the RLR trust. Plaintiffs assert that the Miniat Plan, not the RLR trust, is an employee welfare benefit plan, one of the two types of employee benefit plans covered by ERISA.[11]

ERISA defines an "employee welfare benefit plan" as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

A welfare plan requires five elements: (1) a plan, fund or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits, (5) to participants or their beneficiaries. *See Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir.1982).

The district court's conclusion that there was no "evidence" of a plan separate and apart from the RLR trust is wide of the mark. At this stage in the proceedings the district court may consider only the sufficiency of the allegations—not the sufficiency of the evidence. The Miniat Plan is distinct from the RLR trust, even though the Miniat Plan funds the benefits that it provides by the mechanism of the RLR

---

**10.** In *Peoria,* a case that we believe also supports the thesis that Globe may be a fiduciary, we held that an insurance company was an ERISA fiduciary when the assets of the plan were turned over to it to manage with full investment discretion, subject only to a modest income guaranty. 698 F.2d at 327.

**11.** The other type of employee benefit plan covered by ERISA is an employee pension benefit plan, which is defined at 29 U.S.C. § 1002(2).

trust.[12] Further, the documents before us indicate that the plaintiffs may be able to prove that the Miniat Plan has been established—that is, the decision to extend benefits has become a reality.[13] *See Donovan,* 688 F.2d at 1373. The plaintiffs may well be able to show that a reasonable person "could ascertain the intended benefits, beneficiaries, source of financing and procedures for receiving benefits" from the surrounding circumstances. *Id.* The Plan may adopt some of its essential provisions from sources outside itself, *e.g.,* from the insurance policies that provide the Plan's funding. *Id.* Hence the fact that the Miniat Plan incorporates the provisions of the Globe policies, *see* Miniat Plan § V, does not mean that a separate plan has not been established.

Defendants do not dispute that the Plan was established for the proper purposes. Rather, their contention is that the Miniat Plan was not established by an employer within the meaning of ERISA because the Plan does not cover workers in the "traditional employer-employee relationship." Defendants' Brief at 15.

The regulations under ERISA provide:
(c) *Employees.* For purposes of this section:

1) an individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse....

29 C.F.R. § 2510.3–3. The Miniat Plan is not diminished or vitiated by this regulation because the beneficiaries here are not excluded from employee status by the regulation. Defendants argue, however, that "[w]hen a case falls outside of this *per se* rule, it is necessary to consider whether the alleged 'plan' involves anything more than the use by shareholders of their corporation to acquire their personal insurance coverage on a tax-favored basis." Defendants' Brief at 18. Defendants rely for this argument on *Taggart Corp. v. Life & Health Benefits Administration, Inc.,* 617 F.2d 1208 (5th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981), and *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982).

*Taggart* held that a multiple employer trust that provides group insurance to employers too small to qualify for group rates of their own and which was operated by independent entrepreneurs for profit was not a "plan" within the scope of ERISA. Nor was an employer's subscription to the trust held to establish a "plan." 617 F.2d at 1211. The court emphasized that the alleged plan had no assets and was liable for no benefits and that the "corporation did no more than make payments to a purveyor of insurance, patently for tax reasons." 617 F.2d at 1211.

---

**12.** Plaintiffs apparently failed to attach a copy of the Miniat Plan to their amended complaint. Consequently the Plan did not become part of the pleadings pursuant to Federal Rule of Civil Procedure 10(c), which provides that a "copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." We will, however, on the special facts of this case, consider the Miniat Plan in reviewing the grant of the motion to dismiss. *See Bechtel Corp. v. Local 215, Laborers' Int'l Union,* 405 F.Supp. 370, 374 n. 1 (M.D.Penn.1975) (agreement considered on motion to dismiss although not attached to complaint when it is referred to in the complaint, is attached to motion to dismiss and its authenticity is admitted by defendants), *aff'd in part,* 544 F.2d 1207 (3d Cir.1976). *But see Monroe v. Board of Educ.,* 65 F.R.D. 641 (D.Conn.1975) (documents attached to defendants' brief in opposition to the plaintiffs' motion for partial summary judgment, but not attached to the complaint, are not made part of the pleadings under rule 10(c)). First, defendants concede that plaintiffs referred to the existence of the Miniat Plan in their Amended Complaint. *See* Defendants' Brief at 7 n. 4. Second, defendants attached a copy of the Plan to their Motion to Dismiss and plaintiffs obviously concede its authenticity because they include it in their appendix on appeal and rely extensively upon it in their brief. Third, defendants are apparently content to have us consider this document. *See* Defendants' Brief at 7 n. 4.

**13.** The district court may certainly consider the sequence of the adoption of the Miniat Plan and the purchase of the RLR coverage in considering, in further proceedings, whether a plan was established.

Considering the history, structure and purposes of ERISA, we cannot believe that that Act regulates bare purchases of health insurance where, as here, the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits.

617 F.2d at 1211.

In *Donovan*, on the other hand, the court held that certain employers or unions that subscribed to a multiple employer trust to furnish health insurance for employees or members had established employee welfare benefit plans. One set of subscribers had furnished insurance pursuant to an agreement to furnish such insurance or pursuant to a continuing practice of purchasing insurance for a class of employees. Another set of subscribers had not previously furnished health insurance to their employees or members, and did not subscribe to the trust pursuant to an agreement to furnish such health benefits to their employees. Instead, this group of subscribers had purchased benefits for a substantial percentage of a class of employees or members under circumstances tending to show an anticipation that these benefits would continue to be furnished. 688 F.2d at 1374–75. The *Donovan* court rejected *Taggart* to the extent that that case implied "that an employer or employee organization that only purchases a group health insurance policy or subscribes to a [multiple employer plan] to provide health insurance to its employees or members cannot be said to have established or maintained an employee welfare benefit plan." 688 F.2d at 1375.

Therefore, we see no reason to read into the seemingly clear language of the statute the additional requirement urged by the defendants. Neither the regulation nor the cases require such an intrusion into Congress' domain. The regulation (29 C.F.R. § 2510.3–3) simply does not apply to the case before us. And, contrary to defendants' assertion, *Donovan* does not hold that if the only employer activity is the purchase of insurance, an employee benefit plan results only if a substantial percentage of a class of employees are beneficiaries.[14] Defendants' Brief at 16. The court in *Donovan* said that employers that subscribed to a multiple employer trust pursuant to an agreement to purchase insurance for a class of employees established employee welfare benefit plans—without need for an examination of the number of employees that were furnished with such benefits. 688 F.2d at 1374. The *Donovan* court merely went on to say that "subscribers that previously had not furnished health insurance to their employees or members, *and that did not subscribe to [an insurance trust] pursuant to an agreement to furnish health benefits,* [but] nevertheless did purchase benefits for a substantial percentage of a class of employees or members under circumstances tending to show an anticipated continuing furnishing of such benefits" also established employee welfare benefit plans. 688 F.2d at 1374–75 (emphasis supplied). Nor do we read *Taggart* and *Donovan* as proclaiming some principle to the effect that "the use by shareholders of their corporation as a conduit to obtain insurance cover-

---

**14.** Defendants assert that *Donovan* held that "in order for an 'employee benefit plan' to be one within the coverage of ERISA, it must provide benefits for employees 'because of their employee status in an employment relationship.'" Defendants' Brief at 13. *Donovan* merely stated that:

The gist of ERISA's definitions of employer, employee organization, participant, and beneficiary is that a plan, fund, or program falls within the ambit of ERISA only if the plan, fund, or program covers ERISA participants because of their employee status in an employment relationship, and an employer or employee organization is the person that es-

tablishes or maintains the plan, fund, or program. Thus, plans, funds, or programs under which no union members, employees or former employees participate are not employee welfare benefit plans under Title I of ERISA. *See* 29 C.F.R. 2510 3–3(b), (c).

688 F.2d at 1371. Ronald and Edmund Miniat are deemed to be employees under ERISA and under the regulations for the purpose of determining whether employees are participants in the Plan. The language quoted by the defendants is a summary of the statutory requirements, which the plaintiffs meet, not an addendum to, or gloss upon, those requirements.

age for tax reasons is not the establishment of an employee benefit plan." Defendants' Brief at 16. At most the cases suggest that, when the sole employee of a corporation, for that employee's own benefit or for that of his or her family, subscribes to a trust, the necessary intent on the part of the corporation to provide benefits for its employees may be lacking. Thus, although *Donovan* and *Taggart* are not controlling here, they do support the defendants' broader contention that we should examine the corporation's intent. In the case before us the corporation has, via a written agreement, established its intent potentially to provide benefits to all salaried employees. This is not a case, like *Taggart*, in which a corporation arguably failed to express the necessary intent. Thus, we do not believe that *Taggart* and *Donovan* require dismissal of the complaint.

We express no opinion whether a plan established merely as a "tax scheme" may be protected under ERISA. But even if we were to assume the "tax scheme" was outside ERISA as suggested by defendants, it is certainly unclear at this point that the Miniat Plan was merely a tax scheme for the benefit of shareholders and not a plan for the benefit of employees. The Plan provided post-retirement benefits for salaried employees with fifteen or more years of service. Although defendants argue that only the two shareholders were eligible under these criteria—an assertion that is not clearly supported by the record [15]—presumably other employees

would receive benefits once they had accumulated enough years of service.[16] The possibility of other employees receiving benefits in the future certainly is relevant to determining whether a plan is merely a tax scheme.

For the reasons stated above, we reverse the dismissal of the amended complaint and remand for further proceedings not inconsistent with this opinion. Circuit Rule 18 shall apply.

---

15. Although defendants assert that Ronald and Edmund Miniat were the only employees who qualified for post-retirement benefits, *see* Defendants' Brief at 11, 14, the amended complaint merely states that the "agreement provided eligible employees of Miniat (initially Ronald and Edmund) with post-retirement death benefit coverage." Amended Complaint ¶ 18. We find nothing in the record establishing that Ronald and Edmund are currently the only eligible employees.

16. Defendants argue that we should not consider whether nonshareholder employees could in the future become eligible to participate because, under the regulations, in the future an employee is not considered a participant for

purposes of determining whether a plan is covered by ERISA until the employee is eligible to receive a benefit. *See* 29 C.F.R. § 2510.3–3(d)(i)(1). While this regulation precludes us from considering as employees only those that are merely *potentially* eligible in determining whether a plan is established for the purpose of providing benefits for "its participants or their beneficiaries," this regulation does not preclude us from considering such persons as employees when considering whether an alleged plan is merely a tax scheme. Because Ronald and Edmund Miniat are participants, there is no question in the case before us that the plan was established for the purpose of providing benefits to its participants.