John E. ADKINS, et al., Plaintiffs,

v.

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, etc., Defendant.

No. 96–741–Civ–J–20.

United States District Court, M.D. Florida, Jacksonville Division.

Jan. 21, 1997.

George D. Gabel, Jr., Suzanne M. Judas, Joel B. Toomey, Gabel & Hair, Jacksonville, FL, for John E. Adkins, Ronald Braddock, Ronald W. Ginder, Joyce M. Lay, David C. Sauerhoff and Marvin Franklin.

Richard N. Margulies, Christine Rieger Milton, Leslie L. Hogan, Mahoney, Adams & Criser, P.A., Jacksonville, FL, Howard G. Kristol, Reboul, MacMurray, Hewitt, Maynard & Kistol, New York City, for John Hancock Mut. Life Ins. Co.

### ORDER

SCHLESINGER, District Judge.

This matter is before the Court on the Motion for Dismissal of Defendant John

Hancock Mutual Life Insurance Company (motion to dismiss) (Doc. No. 9) and supporting memorandum (Doc. No. 10) and Plaintiffs' Memorandum of Law in Opposition thereto (opposition) (Doc. No. 14).

Plaintiffs, Trustees of the Anheuser-Busch/Local 941 Pension Plan (Plan or Pension Plan) brought this action on July 11, 1996, alleging that Defendant violated provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1101, *et seq.*, by breaching its fiduciary duty in mismanaging or misappropriating assets of the union's pension plan. Plan assets are managed pursuant to Defendant's group annuity contract, GAC–2605, entered into on December 1, 1975, and presently remaining in effect. Complaint at 9–12.

Defendant has moved to dismiss the entire complaint, arguing that it is barred by a recent amendment to section 401 of ERISA under the Small Business Job Protection Act (SBJPA or Act), the ERISA Clarification Act, enacted in August 1996, but which is retroactive to January 1, 1975. That amendment, in relevant part, relieves insurers who hold assets in their general account from any liability both for acts prior to its enactment and, for a defined period, for future acts that otherwise might give rise to a claim under Part 4 of ERISA, unless a civil action had been commenced by the plaintiff before November 7, 1995. Plaintiffs contend that even if the Court declares the amendment to be constitutional, which Plaintiffs assert it is not on various grounds, the statute would not dismiss all claims, as the action was based only in part on assets held in Hancock's general account. Plaintiffs argue that Defendant's administration of the contract itself, GAC–2605, is judged by the fiduciary standards of ERISA, because it is a plan asset.

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed for failure to state a cause of action "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir.1991). However, where on the basis of a dispositive issue of law no construction of the factual allegation will support the cause of action, the district court may dismiss the complaint. *See Marshall County Board of Education v. Marshall County Gas District,* 992 F.2d 1171, 1174 (11th Cir.1993); *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1539 (11th Cir.), *cert. denied,* 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991).

The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103. All that is required is "a short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). The Federal Rules have adopted this "simplified pleading" approach because of "the liberal opportunity for discovery and other pretrial procedures ... to disclose more precisely the basis of both claim and defense...." *Id.* at 48, 78 S.Ct. at 103. The purpose of notice pleading is to reach a decision on the merits and to avoid turning pleading into "a game of skill in which one misstep by counsel may be decisive to the outcome." *Id.*

Under ERISA, a fiduciary is defined as any person who "exercises any authority or control respecting management or disposition" of "plan assets." § 1002(21)(A). On August 20, 1996, Congress amended section 401 of ERISA, 29 U.S.C. § 1101, by adding a provision which delegates to the Secretary of Labor authority to promulgate regulations to determine, "in cases where an insurer issues 1 or more policies to or for the benefit of an employee benefit plan (and such policies are supported by assets of such insurer's *general account),* which assets held by the insurer (other than plan assets held in its separate accounts) constitute assets of the plan." Pub.L. 104–188, § 1460, 110 Stat. 1755, 1820–1822 (1996) (emphasis added). Therefore, Defendant is liable as a fiduciary under ERISA only for the disposition of Plaintiffs' plan assets, funds other than those held in Defendant's general asset account.

The Conference Report on the new legislation described the background of the applica-

ble provision. In 1975, the Department of Labor issued guidance providing that if an insurance company issues a contract or policy of insurance to an employee benefit plan and places the assets in its general asset account, the assets in that account are not considered to be plan assets. Interpretive Bulletin 1975–2, 29 C.F.R. § 2509.75–2(b) (1992). The term "general account" refers to all assets of an insurance company which are not legally segregated and allocated to separate accounts. As explained in the legislative history to the ERISA Clarification Act, "[t]he assets in a general account are derived from all classes of business and support the insurer's obligations on an unsegregated basis, with no particular assets being specifically to meet the obligations under any particular contract or policy." H.R. Conf. Rep. 104–737, n. 37, U.S.Code Cong. & Admin.News 1996, pp. 1474, 1758. However, in 1993, the United States Supreme Court, in the case of *John Hancock Mutual Life Insurance Co. v. Harris Trust and Savings Bank,* 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993), ruled that certain assets held in an insurance company's general account should be considered plan assets.

The ERISA Clarification Act, however, now makes it clear that insurers may not be held liable for acts based on alleged breach of fiduciary duty under ERISA arising out of acts or omissions in connection with pension funds held in the insurer's general account, except for lawsuits filed before November 7, 1995. 29 U.S.C. § 1101(c)(5)(B). The lawsuit in the instant case was filed after November 7, 1995. Presumably, the Act precludes Plaintiffs proceeding against Defendant for any claim arising from assets held in Defendant's general account. However, there appears to be some dispute between the parties regarding what aspect of Plaintiffs' claims are for Defendant's administration of assets held in their general account as opposed to assets held in separate accounts. Plaintiffs also challenge the constitutionality of the amendment.

Thus far, only one federal court has ruled on the constitutionality of the amendment. *See Tool v. National Employee Benefit Services, Inc.,* 1996 WL 681989 (N.D.Cal.

November 15, 1996). That court held that retroactive application of the Act did not violate due process, as the language satisfies the requirement set by *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 843, 110 S.Ct. 1570, 1580, 108 L.Ed.2d 842 (1990): statutes are not to be given retroactive effect "unless the legislative purpose to do so plainly appears." The California district court held, and this Court agrees, that the Act expressly provides that its amendments to ERISA section 401 are "to take effect on January 1, 1975" and are to apply to any civil action commenced after November 7, 1995. That court also found the legislature did not act in an "arbitrary and irrational way" by changing the law in response to court interpretation contrary to Congress' intention. *Tool,* at *5–6 (citations omitted). The Court finds the analysis of the California district court to be persuasive and applicable to this case, and that the amendment does not violate due process.

The *Tool* court also found that the complaint lacked allegations sufficient to find that MassMutual was a fiduciary under ERISA. While the court noted that "[p]rior to the passage of the SBPA, MassMutual may have been considered a fiduciary under the ERISA section 302 definition because MassMutual is a manager of plan assets with discretionary authority over the rate of return on the assets," *id.* at *5, citing *John Hancock,* 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524, "the SBPA clearly excludes MassMutual from the definition of fiduciary, and the legislative purpose to retroactively apply the statute is clear." *Id.* The court further found that MassMutual "cannot be subject to ERISA liability merely because it holds assets of the plans. It can only be held liable if it holds the plan assets in a separate account or comes within an SBPA exception." *Id.*

After careful examination of the Complaint, the Court is of the opinion that at least a portion, if not the majority, of Plaintiffs' claims may arise out of funds held in Defendant's general account and thus must be precluded. The Complaint alleges that John Hancock continuously:

(I) has failed to act for the exclusive purpose of providing benefits to the Plan's eligible employees, including by imposing unreasonable charges, (ii) has failed to act with the care, skill, prudence and diligence that a prudent person acting as a fiduciary familiar with Plan matters would use in conducting an enterprise of a like character and with like aims, and (iii) has improperly dealt with Plan assets in its own interest or for its own account, or in the interests of non-participants, and has overcompensated itself.

Complaint at ¶ 13. The first action listed in the Complaint that allegedly was taken by Defendant is:

Its failure to segregate the assets of the Plan and to invest those assets.... Instead, [Defendant] has commingled those assets *with other assets in its general account* and has used Plan assets for its own benefit in satisfying its own obligations unrelated to the Plan....

*Id.* at ¶ 14(a) (emphasis added).

Plaintiffs assert that regardless of the status of Defendant's general account assets under ERISA, the entire contract itself, GAC–2605, itself is "clearly a plan asset, and the complaint alleges that defendant has breached its fiduciary duties in its discretionary administration of the contract itself, [t]hus, this portion of the complaint survives the amendment." Opposition at 4. Defendant, of course, contends that GAC–2605 is a "General Account" contract in that, by its terms, all contributions, or premiums, paid under the contract, unless otherwise directed by the Trustees, are assigned to Hancock's General Investment Account. Memorandum at 2. On that basis, Defendant has moved to dismiss Plaintiffs' entire complaint.

Defendant appended a copy of the contract to its memorandum in support of its motion to dismiss, Exhibit A to Doc. No. 10. Although on a motion to dismiss the Court normally may not consider matters outside the four corners of the complaint, Plaintiffs do not object to the Court considering the contract as part of Plaintiffs' complaint. Opposition at 6. The contract itself is instructive on the issue of where funds may be held.

Article II, § 2, entitled "Contributions," states:

Contributions remitted to the John Hancock shall be placed in the *Immediate Participation Guarantee* [IPG] *Fund* or if the Contract Holder has so directed in a written notice, such Contributions or a portion thereof shall be placed in one or more of the *Separate Funds* maintained under this Contract, subject to the provisions of this Article.

Contributions payable to the [IPG] Fund *shall be assigned to the General Investment Account.* The General Investment Account is the account maintained by the John Hancock for all assets which are not assigned to and made a part of its Separate Investment Account.

Contributions payable to the Separate Funds shall be assigned to *Separate Investment Account Number One.* Separate Investment Account Number One is the Separate Account maintained by the John Hancock for pension and profit sharing contracts in accordance with applicable law....

Group Annuity Contract 2605 GAC, Article II, § 2, Exhibit A to Defendants' Motion to Dismiss. According to the plain language of the contract, it appears that funds automatically are placed in the IPG Fund, unless the contract holder (the Trustees) so directs the insurer, in a written notice, to place the contributions in a separate fund. All IPG funds "shall be" assigned to Hancock's general investment account. Contrary to Defendants' assertions, however, clearly not *all* funds necessarily are maintained in Defendants' general account. When the Trustees so provide by written notice, funds may be directed to the separate investment account.

■ The Court finds that Defendant may hold pension funds both in its general account and also in a separate account. Clearly any of Plaintiffs' claims which are based on assets held by Defendant in its general account are now precluded by the amendment to the Act, and therefore, are DISMISSED. However, any claims asserted by Plaintiffs which are not held in Defendant's general

account but are part of any separate account, as outlined in Article II, § 2, remain viable.