In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2360

Midwest Community Health
Service, Inc., now known as
silver cross health system, et al.,

Plaintiffs-Appellants,

v.

American United Life Insurance Co.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 6128--James F. Holderman, Judge.

Argued November 6, 2000--Decided June 21, 2001


  Before Kanne, Diane P. Wood, and Williams,
Circuit Judges.

  Williams, Circuit Judge.  The appellants,
members of the Illinois Hospital
Association ("IHA"), filed this suit
alleging that American United Life
Insurance Co. ("AUL") breached its
fiduciary duties under sec. 409(a) of the
Employee Retirement Income Security Act
("ERISA") by failing to disclose material
information about the appellants' rights
under a group annuity contract. Both
parties moved for summary judgment. The
district court denied the appellants'
motion but granted AUL's, holding that as
a matter of law, AUL was not an ERISA
fiduciary with respect to the conduct al
leged by the appellants because AUL was
exempt from liability under sec. 401(c)(5)
of ERISA. We reverse and remand for
further proceedings.

I

  The IHA designated AUL as its "preferred
vendor" for tax-qualified employee
benefit plans and recommended that its
member hospitals use AUL to fund their
employee pension plans. The IHA entered
into a group annuity contract issued by
AUL (hereinafter referred to as the "IHA
Contract"), which permitted any IHA
member to become an additional contract

holder. The appellants, members of the IHA, accepted the IHA Contract and became bound by the contract's terms. Pursuant to the IHA Contract, the appellants deposited funds with AUL. These funds were allocated by AUL to its general investment account as opposed to a separate account specifically attributable to the IHA Contract.

Under the IHA Contract, AUL reserved the right to make certain changes in the future without approval by the IHA or the appellants. The IHA Contract also provided that in the event the appellants elected to cash out, i.e., transfer assets away from AUL, AUL would assess a withdrawal or "surrender charge" and make an "investment liquidation adjustment" to the amount of money withdrawn. The investment liquidation adjustment reflected the change in value of the investments due to current investment yields that were different from those prevailing at the time the funds were invested by AUL. Thus, the adjustment could be positive or negative depending upon changes in interest rates.

In 1992, AUL asked the appellants to transfer their funds on deposit under the IHA Contract to a new type of group annuity contract, an AUL-Star Contract. The appellants claim that AUL and its agents failed to disclose: 1) the amount of the positive liquidation adjustment that the appellants could have received under the IHA Contract if it had cashed out at that time instead of converting to the AUL-Star Contract; and 2) the difference between the IHA Contract's positive or negative investment liquidation adjustment and the AUL-Star Contract's negative-only adjustment. If the appellants had cashed out, they would have been entitled to a $1.2 million investment liquidation adjustment that would have greatly offset the surrender charge. The appellants contend that they would not have agreed to convert to the AUL-Star Contract if they knew of the $1.2 million investment liquidation adjustment and the loss of the right to a positive investment liquidation adjustment once they accepted the AUL-Star Contract. Significantly, the appellants do not claim that AUL misappropriated or misused the funds that were deposited under the IHA Contract and held in AUL's general account.

AUL denies that it failed to disclose material information to the appellants. AUL contends that it provided all relevant information to the appellants, including a detailed explanation of the meaning of each of the provisions of, and the differences between, the IHA Contract and the AUL-Star Contract. AUL moved for summary judgment on the grounds that: 1) under sec. 401(c)(5) of ERISA, AUL was exempt from liability as a fiduciary with respect to the conduct alleged by the appellants; 2) even if AUL was a fiduciary, it did not breach its duty because it disclosed material information to the appellants; and 3) AUL was released from liability by the appellants under a Settlement Agreement that accompanied the conversion to the AUL-Star Contract.

The appellants also moved for summary judgment arguing that: 1) AUL was an ERISA fiduciary because AUL had discretionary authority and control over the IHA Contract, which is an asset of the plan separate and apart from the funds supporting the contract; and 2) AUL breached its fiduciary obligation when it failed to fully and completely disclose material facts affecting the appellants' interests. The district court granted AUL's motion on the basis that sec. 401(c)(5) of ERISA, which provides that "[n]o person shall be subject to liability" for breach of an ERISA duty "on the basis of a claim that the assets of an insurer (other than plan assets held in a separate account) constitute assets of the plan," exempts AUL from liability. 29 U.S.C. sec. 1101(c) (5)(B). Because the court found that as a matter of law AUL was not an ERISA fiduciary with respect to the conduct complained of by the appellants, it denied the appellants' motion for summary judgment and did not need to reach AUL's other arguments.

On appeal, the appellants challenge the district court's holding and argue in the alternative that even if AUL cannot be held liable as an ERISA fiduciary, AUL is still liable as a "party in interest" that participated in a transaction prohibited by ERISA. See Harris Trust & Sav. Bank v. Salomon Smith Barney Inc., 530 U.S. 238 (2000). In the event that we find AUL is an ERISA fiduciary, AUL

renews its arguments that were not decided by the district court.

II

We review a district court's grant of a motion for summary judgment de novo, drawing all inferences in favor of the non-moving party. Larsen v. City of Beloit, 130 F.3d 1278, 1281 (7th Cir. 1997).

The dispute in this case centers on whether AUL is subject to ERISA fiduciary liability for exercising discretionary control over the IHA Contract. ERISA provides that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . ." 29 U.S.C. sec. 1002(21)(A) (emphasis added). We have twice held that an insurer's discretionary authority or control over group insurance contracts purchased by employee benefit plans subjects the insurer to ERISA fiduciary standards. See Ed Miniat, Inc. v. Globe Life Ins. Group, Inc., 805 F.2d 732, 738 (7th Cir. 1986); Chicago Bd. Options Exch., Inc. v. Connecticut Gen. Life Ins. Co., 713 F.2d 254, 260 (7th Cir. 1983).

In Ed Miniat, the plaintiffs were participating employers in a retirement life reserve insurance policy issued by the defendants. 805 F.2d at 733. They brought suit alleging that the defendants breached their fiduciary duties under ERISA by retaining more than one half of the premiums paid by the plaintiffs when the plaintiffs withdrew their accumulated contributions. We reversed the district court and found that the plaintiffs had stated a claim that the defendants were ERISA fiduciaries. Id. at 738. We looked to the terms of the policy that gave the defendants the unilateral right to change the rate of return and annual premiums, and found that their power to amend the policy and alter its value constituted the requisite authority over an asset of the plan. Id.

Similarly, in Chicago Board Options Exchange, we held that the insurer's ability to amend a group annuity contract and alter its value subjected the insurer

to ERISA fiduciary obligations. 713 F.2d at 260. In that case, the plaintiffs entered into a group annuity contract with the defendant that was designed to fund retirement benefits for the plaintiffs' employees. They sought to discontinue the contract and withdraw the funds deposited under the contract after the defendant notified the plaintiffs of its intent to amend certain provisions of the contract, which would have had the effect of locking in the plaintiffs for the next ten years. In reversing the district court's dismissal for failure to state a claim, we found that the group annuity contract itself was an asset of the plan and the insurer's ability to alter its value constituted discretionary "'control respecting . . . disposition of [plan] assets.'" Id. at 260 (quoting 29 U.S.C. sec. 1002(21)(A)) (alteration in original).

Under the principles of Ed Miniat and Chicago Board Options Exchange, AUL is an ERISA fiduciary. The IHA Contract, like the group annuity contract in Chicago Board Options Exchange was issued by an insurer in favor of the employee pension plans. As such, it is an asset of theemployee pension plans./1 Id. at 259-60. And because AUL had discretionary authority over the contract in its ability to amend the value of the contract, AUL is an ERISA fiduciary. Ed Miniat, Inc., 805 F.2d at 738; Chicago Bd. Options Exch., Inc., 713 F.2d at 260.

AUL asserts, however, that the IHA Contract is not an asset of the plan and contends that sec. 401(c)(5) shelters it from ERISA fiduciary liability because the funds supporting the IHA Contract were held in AUL's general investment account. In support, AUL relies on two district court cases. See Adkins v. John Hancock Mutual Life Ins. Co., 957 F. Supp. 211 (M.D. Fla. 1997); Tool v. Nat'l Employee Benefit Serv., Inc., 957 F. Supp. 1114 (N.D. Cal. 1996). In both cases, the plaintiffs brought suit alleging that the insurers stole or misappropriated their pension plan contributions. Adkins, 957 F. Supp. at 212; Tool, 957 F. Supp. at 1116. Those courts found that prior to the passage of sec. 401(c)(5), the insurers may have been considered fiduciaries because they had discretionary authority over the rate of return on the assets. However, the courts

held that sec. 401(c)(5) excluded the insurers from the definition of fiduciary because the insurers held the pension funds in the insurer's general accounts. Adkins, 957 F. Supp. at 213; Tool, 957 F. Supp. at 1119. AUL's reliance on these cases effectively asks us to hold that sec. 401(c)(5) erodes our holdings in Ed Miniat and Chicago Board Options Exchange. We decline to do so in this case.

Section 401(c)(5) provides:

No person shall be subject to liability under this part [for breach of ERISA fiduciary duties] for conduct which occurred before [December 31, 1998] on the basis of a claim that the assets of an insurer (other than plan assets held in a separate account) constitute assets of the plan . . . .

29 U.S.C. sec. 1101(c)(5)(B). Here, the appellants' claim is not premised on a finding that assets of AUL held in AUL's general account are assets of the plan. Instead, the basis of the appellants' claim is that AUL failed to disclose the amount of the investment liquidation adjustment if they cashed out instead of converting and that the package of rights under the IHA Contract (with the potentially positive investment liquidation adjustment) was more valuable than the package of rights provided under the AUL-Star Contract. Unlike the cases relied upon by AUL, the appellants are not claiming that AUL misappropriated or illegally converted the funds deposited under the group annuity contract. Cf. Adkins, 957 F. Supp. at 212 (plaintiffs claimed insurer mismanaged or misappropriated pension plan assets); Tool, 957 F. Supp. at 1116 (plaintiffs claimed insurer stole pension plan contributions). Therefore, where AUL held the funds supporting the IHA Contract, i.e., in its general account or in a separate account, is irrelevant because the appellants' claim has nothing to do with the (mis)management of the funds.

This reading of sec. 401(c)(5) is also consistent with the events leading to its enactment. Prior to John Hancock Mutual Life Ins. Co. v. Harris Trust & Savings Bank, 510 U.S. 86 (1993), the insurance industry operated under the assumption that assets held in insurers' general

accounts were not regarded as plan assets, and therefore, insurers were not subject to ERISA's fiduciary responsibility provisions with respect to those funds. See 29 C.F.R. sec. 2509.75-2(b) (1992); Department of Labor Proposed Class Exemption for Certain Transactions Involving Insurance Company General Accounts, 59 Fed. Reg. 43,134 (proposed August 22, 1994). In Harris Trust, the Supreme Court found that certain assets held in an insurer's general account could be considered plan assets subject to ERISA's fiduciary standards. 510 U.S. at 101. The effect was that, after Harris Trust, an insurer could potentially be subject to ERISA fiduciary standards for "general operational business decisions relating to salaries and benefits for the employees of the insurer, the provision of office space and materials, advertising expenses, charitable contributions," and all sorts of internal transactions "due to the pooled nature of general account assets." Department of Labor, 59 Fed. Reg. at 43,136. In response, Congress enacted legislation authorizing the Department of Labor to issue regulations to determine whether assets held in an insurer's general account could be considered plan assets./2 Pending the issu-ance of the regulations, Congress added sec. 401(c)(5) as a "safe-harbor" for insurers holding assets that supported insurance contracts in their general investment accounts.

The events behind sec. 401(c)(5)'s enactment, then, also show that sec. 401(c)(5) is not implicated in this case because the appellants' claim is not aimed at finding that assets of the insurer held in the insurer's general account are assets of the plan. Here, AUL exercised its discretionary authority to amend the IHA Contract and altered the contract's value. Accordingly, AUL is subject to ERISA fiduciary standards. See Ed Miniat, Inc., 805 F.2d at 738; Chicago Bd. Options Exch., Inc., 713 F.2d at 260. We therefore reverse the district court's grant of summary judgment in favor of AUL.

Because we find that AUL can be held liable as an ERISA fiduciary with respect to the conduct alleged in the complaint, we need not determine if AUL was a "party-in-interest" to a prohibited transaction. Furthermore, we do not reach

AUL's remaining arguments because they were not addressed by the district court in the first instance. Accordingly, we remand those determinations to the district court.

III

For the foregoing reasons, the judgment of the district court is REVERSED and the case REMANDED for further proceedings.

FOOTNOTES

/1 The Department of Labor has published regulations, to be effective July 5, 2001, supporting our finding in Ed Miniat, Inc., 805 F.2d at 737-38 and Chicago Bd. Options Exch., Inc., 713 F.2d at 260, that a group annuity contract is itself an asset of the ERISA plan:

[W]hen a plan has acquired a Transition Policy (as defined in paragraph (h)(6) of this section), the plan's assets include the Transition Policy, but do not include any of the underlying assets of the insurer's general account if the insurer satisfies [certain] requirements [set forth in the regulations.]

The term Transition Policy means: (i) A policy or contract of insurance (other than a guaranteed benefit policy) that is issued by an insurer to, or on behalf of, an employee benefit plan on or before December 31, 1998, and which is supported by the assets of the insurer's general account.

29 C.F.R. sec. 2550.401c-1(a)(2) and (h)(6)(i).

/2 The statute, entitled "Clarification of application of ERISA to insurance company general accounts," provides:

[T]he Secretary shall issue proposed regulations to provide guidance for the purpose of determining, in cases where an insurer issues 1 or more policies to or for the benefit of an employee benefit plan (and such policies are supported by assets of such insurer's general account), which assets held by the insurer (other than plan assets held in its separate accounts) constitute assets of the plan . . . .

29 U.S.C. sec. 1101(c)(1)(A).